**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

APRIL MANUEL                                    CASE NO.  2:23-CV-01644

VERSUS                                          JUDGE JAMES D. CAIN, JR.

B H G HOLDINGS L L C ET AL                      MAGISTRATE JUDGE LEBLANC

## MEMORANDUM RULING

Before the Court is a "Motion to Dismiss Pursuant to Fed.R.Civ P. 12(b)(6)" (Doc. 25) wherein Defendants, BHG Holdings, LLC d/b/a/ Behavioral Health Group, BHG LXII, LLC d/b/a BHG Medical Services-Louisiana, VCPHCS VI, LLC d/b/a BHG Lake Charles Treatment Center move to dismiss certain counts of the *qui tam* Complaint against them for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure (9)(b).

Relator, April Manuel, brings this action on behalf of (1) the United States, by and through its agency, the Department of Health and Human Services ("DHHS") and the Centers for Medicare & Medicaid Services ("CMS"),; (2) the Department of Defense ("DOD"), Defense Health Agency ("DHA"), and the Department of Veterans Affairs ("VA"); (3)  the Louisiana Department of Health, which is responsible for operating the Louisiana Medicaid Program; and (4) herself.

Relator has failed to oppose Defendants' motion and the deadline for doing so has passed.[1]  As such, the Court accepts Defendants' Motion and Memorandum in support thereof as unopposed.

## BACKGROUND

Relator was employed as a Counselor by Defendant, BHG Lake Charles Treatment Center ("BHG Lake Charles") from May 12, 2022, until her termination on October 23, 2023.[2] Defendant BHG Louisiana is a limited liability company that facilitates and provides Opioid Treatment Programs ("OTPs") to patients throughout southwest Louisiana, including at the Lake Charles facility, where Relator worked. Defendant BHG Holdings is a holding company that owns and operates OTPs in at least 115 subsidiaries, five of which are located in Louisiana.[3]

Relator alleges the following fraudulent act/schemes:

(1) As of July 1, 2023, after the departure of Clinical Supervisor Naomi Bellard, there was no Clinical Supervisor ("CS") who was on duty and on call. By not having a CS, Defendant failed to meet the prerequisite requirement to receive state or federal funding. Because there was no CS present, there was no one to provide supervision to any unlicensed behavioral health professional ("UPs"). Therefore, Defendants failed to comply with the express condition for SAMHSA

---

[1] Doc. 26, Notice of Motion Setting.
[2] Complaint, Doc. 1, ¶¶ 33, 34.
[3] *Id.* ¶ 41.

certification and were not eligible for Medicaid reimbursement from July 1, 2023, through October 23, 2023.[4]

(2) The OTPs were required to have a sufficient number of licensed mental health professionals ("LMHPs") to meet the needs of its patients. The UPs, including Relator, had caseloads that exceeded 75 patients. By having such a high caseload, Defendants pressured its employees to take on a much higher caseload than allowed by Federal, State, and local laws and regulations. Relator alleges, "upon information and belief," that Defendants increased the UPs' caseloads to maximize profit, regardless of whether adequate counseling services were ever provided. She further alleges that Defendants knowingly presented, or caused to be presented, a false or fraudulent claim and used or caused to be used a false record of statement material to a false or fraudulent claim.[5]

(3) UPs must be supervised by LMPHs. According to the Louisiana Counseling Association, a Provisionally Licensed Professional Counselor must be supervised by an LMHP or a physician.[6] Relator alleges that Defendants submitted bills to commercial insurers and Government Health Programs for "false and fraudulent" group therapy sessions.[7] She also alleges that Dr. John DiGiglia, the Medical Director, and Deidra Richard, the Program Director, orchestrated a scheme that pressured and coerced employees to perform

---

[4] *Id.* ¶¶ 280-281.
[5] *Id.* ¶¶ 283-303.
[6] *Id.* ¶ 311, 316.
[7] *Id.* ¶ 327.

counseling services on patients that were falsely or fraudulently billed that did not occur for the length of time billed and were not conducted by an LMHP.[8]

(4) Relator alleges she was "forced to participate" in conduct which included falsely documenting that Defendants' counselors and therapists were performing a certain type of counseling therapy or face disciplinary consequences.[9] She alleges that BHG Lake Charles facility counselors and therapists created general templates to combine Reassessments and Brief Addiction Monitor ("BAM") responses of different patients.[10] Relator alleges that the Reassessments and BAMs were done to "comply" with federal law. Relators allege that the Defendants engaged in this conduct to save time so that they could see more Government Healthcare Program patients without taking the necessary time to provide counseling services.[11]

(5) To conceal the fraudulent nature of the Reassessments and BAMs, Relator alleges that the facility shredded the physical copies of these documents. Relator alleges that (1) the purpose of the facility-wide emails with pre-populated templated Reassessments and BAMs was to avoid providing actual therapy to patients and to increase Defendants' revenue; (2) this policy was directed by Defendants at the corporate level, and (3) Defendants submitted Governmental

---

[8] *Id.* ¶ 328.
[9] *Id.* ¶¶ 331-336.
[10] *Id.* ¶¶ 363-365.
[11] *Id.* ¶¶ 372-373.

Healthcare Programs for false and fraudulent individual counseling therapy sessions.[12]

(6) Relator alleges that Defendants did not meet the requirements for time billed for the 30-minute therapy session. Specifically, Relator alleges that Defendants consistently billed for more patients than can possibly be seen at the Lake Charles facility during counseling hours.[13] Relator alleges that Defendants submitted bills to Government Healthcare Programs for false and fraudulent individual counseling therapy sessions.[14]

(7) Relator alleges that Defendants did not provide adequate therapy services to its OBOT patients. Relators alleges that patient records reflect that Defendants did not complete Admission Assessments or Comprehensive Assessments on 60 out of 109 patients. Relator alleges that Relator and other employees were requested to backdate the documents and that Defendants submitted claims to Governmental Healthcare Programs for these false and fraudulent service notes and treatment.[15]

(8) Relator alleges that Defendants knowingly made false statements, implied certifications, and express certifications that were material to the Governmental Healthcare Programs' decisions to pay claims for individual therapy and counseling services at the Lake Charles Facility.[16] The falsification of

---

[12] *Id.* ¶¶ 375-378.
[13] *Id.* ¶¶ 379-392.
[14] *Id.* ¶ 399.
[15] *Id.* ¶¶ 400-415.
[16] *Id.* ¶ 429.

Assessments, BAMS and Treatment Plans was knowingly performed at the direction of Defendants at the corporate level.[17] Additionally, Defendants engaged in and continue to engage in a pattern and practice of falsifying OBOT and individual counseling service records for Governmental Healthcare Program beneficiaries at the Lake Charles facilities,[18] and submitted false and fraudulent claims for individual therapy and counseling services to Governmental Healthcare Programs for patients.[19]

(9) Relator alleges that Defendants' submission of individual or group therapy claims to a Governmental Healthcare Program, they made express and/or implied false certifications of compliance with: (a) Federal law, regulations, and treatment standards; (b) Louisiana law; (c) SAMHSA certification requirements; (d) SAMHSA accreditation requirements; (e) Provider agreements; and (f) LaSOR[20] grant subrecipients.

Relator alleges the following Counts, that are relevant to this Motion:

(1) Count I – Federal False Claims Act (FCA): Presenting or Causing the Presentation of False Claims 31 U.S.C. § 3729 (a)(1)(A)

(2) Count II – Federal False Claims Act (FCA): Use of False Record or Statement Material to a False Claim 31 U.S.C. § 3729(a)(1)(B)

---

[17] *Id.* ¶ 430.
[18] *Id.* ¶ 431.
[19] *Id.* ¶ 432.
[20] Louisiana State Opioid Response.

(3) Count III – Violations of the False Claims Act: Conversion 31 U.S.C. § 3729(a)(1)(D)

(4) Count IV – Violations of the False Claims Act: Submission of Express and Implied False Certifications 31 U.S.C. § 3729(a)(1)(B)

(5) Count V - Violations of the False Claims Act: Fraudulent Inducement 31 U.S.C. § 3729(a)(1)(B)

(6) Count VI – Violations of the False Claims Act: Reverse False Claims 31 U.S.C. § 3729(a)(1)(G)

(7) Count VII – Violations of the False Claims Act: "Conspiracy" 31 U.S.C. § 3729(a)(1)(c)

(8) Count VIII – Health Care Fraud – 18 U.S.C. § 1347

(9) Count IX – Violations of Louisiana Medical Assistance Programs Integrity LAW ("LMAPIL") Louisiana Revised Statute § § 46:437.1

(10)   Count X – Violations of the Federal Whistleblower Statute 42 U.S.C. § 6971 *et seq.*

(11)   Count XII – Vicarious Liability *Respondeat Superior,* Louisiana Civil Article § 2320

In her prayer for relief, as to Counts I, II, III, IV, V, VI and VII, Relator requests that Relator and the United States be awarded a judgment against each Defendant, jointly and severally for damages, and triple damages pursuant to Federal False Claims Act, § 3729(A) to include civil penalties for each false claim submitted with reasonable attorneys' fees pursuant 31 U.S.C. § 3729 (a)(3)(B), expenses and costs with prejudgment and post

judgment interest. Additionally, Relator requests that Defendants be fined under the title or imprisoned not more than 10 years, or both. Relator also requests that the Court grant permanent injunctive relief as to the alleged false claims.

As to Counts IX and XII, Relator requests that Relator and Louisiana be awarded a judgment against each Defendant, joint and severally for actual damages, plus treble damages pursuant to Louisiana Revised Statute § 46:438.1 *et seq.* plus the maximum percentage of any recovery allowed pursuant to Louisiana Revised Statute § 46:439.4.

Generally, Relator requests that Defendants be sanctioned to include a refund of payments made to a physician or LMHP who failed to make the required disclosures, as well as suspension, revocation, refusal to issue, or imposition of probationary or other restrictions on any license or permit held or applied for by the physician or LMHP who is found to have committed a violation. La. Admin. Code 46, pt. XLV, § 4217.

As to Count X, Relator requests that she be awarded a judgment to include the amount of all costs and expenses of this litigation including reasonable attorney fees, and expert witness fees.

As to Count XI, Relator requests compensatory damages, past and future lost wages, pain and suffering, mental anguish, benefits, loss of earning capacity, reinstatement reasonable attorney fees and court costs.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Defendants contend that Relator's Complaint (1) fails to plead facts sufficient to state a plausible claim for relief under Rule 12(b)(6) for all the FCA and MAPIL claims, and (2) fails to satisfy the heightened particularity requirements applicable to fraud-based claims under Federal Rule of Civil Procedure. 9(b). Defendants argue that Relator alleges only conclusory assertions of wrongdoing, and allegations made "upon information and

belief," without identifying specific claims, dates, amounts, billing codes, or participants necessary to connect Defendants to actionable misconduct. Additionally, Defendants maintain that Relator has alleged several causes of action that are wholly inapplicable to the law or facts of the case. As such, Defendant move to dismiss Counts I through X and Count XII.

*Count I – Federal False Claims Act (FCA): Presenting or Causing the Presentation of False Claims 31 U.S.C. § 3729(a)(1)(A)*

The FCA establishes liability against "any person who—(A)knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval:" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;. . . ."

There are three requisite elements to plead a violation of § 3729(a)(1)(A): (a) the presentment of a claim, (b) the claim is false or fraudulent, and (c) knowledge that the claim presented was false or fraudulent. The "presentment" provision "includes an express presentment requirement" and a requirement "that the claim was false or fraudulent and that the action was undertaken knowingly." See *U.S. ex. rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). The "knowingly" element requires a finding that the defendant purposely acted with the intent to get a false claim paid. *Id.* at 192.

Defendants maintain that Relator's allegations in the Complaint do not plead any of the aforementioned elements with the required specificity. In *Grubbs*, the Fifth Circuit held that "to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually

submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that leads to a strong inference that claims were actually submitted." *Id.* at 190. In *Grubbs*, the court appeared to accept a complaint that included both particular details of a scheme to present fraudulent bills to the Government and allegations making it likely bills were actually submitted, which puts Defendants on notice of the allegations made against them. In other words, to satisfy Rule 9(b), the complaint should set out the particular working of a scheme that was communicated directly to the relator (a first-hand experience) by those perpetrating the fraud. See *Grubbs* at 191-192.

The particularity requirement of Rule 9(b) applies to FCA allegations. See *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 195, n.6 (2016). "The FCA penalizes persons who present, or cause to be presented, to the federal government 'a false or fraudulent claim for payment or approval.' Thus, Rule 9(b) requires both that the circumstances of the alleged fraud and the claims themselves be alleged with particularity." *Lawton ex rel. United States v. Takeda Pharm. Co., Ltd.*, 842 F.3d 125, 130 (1st Cir. 2016) (citing 31 U.S.C. § 3729(a)(1)). Defendants argue that Relator's Complaint contains only conclusory and general factual allegations regarding allegedly false schemes and lack specificity.

Defendants contend that there is not one specific allegation of a knowingly false claim that was presented to a Government payor for payment. As previously noted, no opposition have been filed. As such, this claim will be dismissed.

*Count II – Federal False Claims Act (FCA): Use of False Record or Statement Material to a False Claim 31 U.S.C. § 3729(a)(1)(B)*

In pertinent part, the FCA establishes liability for "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ." See 31 U.S.C. § 3729(a)(1)(B). Relator seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(B) of the False Claims Act for violations after May 15, 2022.[21] Relator alleges that Defendants made, used, or caused to be made or used, false records and statements, and omitted material facts, to get false claims paid or approved, within the meaning of 31 U.S.C. § 3729(a)(1)(B).[22]

Defendants maintain that Relator's Complaint fails to allege sufficient facts that these records were false. Considering that Relator does not oppose the Motion, Count II will be dismissed.

*Count III – Violations of the False Claims Act: Conversion 31 U.S.C. § 3729(a)(1)(D) and Count VI – Violations of the False Claims Act: Reverse False Claims 31 U.S.C. § 3729(a)(1)(G)*

Defendant argues that Relator is attempting to bring an FCA claim under a conversion theory of liability that is improper. A plaintiff may bring an FCA claim "under a 'conversion' theory of liability against 'any person who has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property.'" *United States*

---

[21] *Id.* ¶ 508.
[22] *Id.* ¶ 509.

*Ex rel. Harbit v. Consultants in Gastroenterology, P.A.*, 2021 WL 1197124, at *7 (D.S.C. Mar. 30, 2021) (citing *U.S. ex rel. Kasowitz Benson Torres*, 285 F. Supp. 3d 44, 47 (quoting 31 U.S.C. § 3729(a)(1)(D)). "For a defendant to 'know' that he is delivering or causing to be delivered 'less than all' of a certain property 'used, or to be used, by the Government,' he must necessarily also know that the property belongs to the [G]overnment." *Id.* (citing *Kasowitz*, 285 F. Supp. 3d at 55 (quoting *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 439 (6th Cir. 2016)).

Defendants argue that Relator has failed to allege what property was converted, or what funds that are in Defendants' possession, when they allegedly obtained such property, how much was purportedly withheld or facts to show that Defendants acted with knowledge that the property belonged to the Government. Defendants also contend that this claim is duplicative of Relator's Reverse False Claims Act claim alleged in Count VI. In Count VI, Relator has asserted a reverse false claims theory under § 3729(a0(1)(G), alleging Defendants concealed or avoided an "obligation" to pay money to the Government, including by retaining overpayments.

The Court agrees with Defendants here that either these claims are duplicative, and/or Relator has failed to allege sufficient facts to support either claim. The Court will dismiss Counts III and VI.

*Count IV – Violations of the False Claims Act: Submission of Express*

"[F]alse certifications of compliance create liability under the FCA when certification is a prerequisite to obtaining a government benefit. Thus, where the

government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997). Stated plainly, Rule 9(b) requires "that a claim of false certification be pled with particularity, identifying facts such as what the certification of compliance stated, who submitted the certification, when and where it was submitted to the government, and how the actual certification was false." *Thompson v. LifePoint Hosps., Inc.*, 2013 WL 5970640, at *4 (W.D. La. Nov. 8, 2013). Where the "Relator has failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes identified in the Complaint," dismissal is proper. *Id.* at *3. "[T]he Fifth Circuit has repeatedly held that a relator cannot maintain a FCA case unless: (1) the provider was required to file a certification in connection with the claim; (2) the filed certification was false; and (3) relator identified specific claims and/or certifications that were fraudulent." *Thompson*, 2013 WL 5970640, at *3 (emphasis added).

Defendants argue that Relator has failed to allege a specific claim for payment that was made with a specific certification that is alleged to be false such that there is no actual allegation in the Complaint as to which certification was made, when it was made, who made a certification, and what that certification entailed.

The Court agrees that the Complaint is lacking as to any specific claim for payment that was made with a specific certification alleged to be false. The Court will dismiss Counts IV.

*Count V - Violations of the False Claims Act: Fraudulent Inducement 31 U.S.C. § 3729(a)(1)(B)*

In Count V, Relator asserts a fraudulent-inducement theory under the FCA. Section 3729(a)(1)(B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Relator pleads fraudulent inducement by alleging Defendants' purported misrepresentations and omissions induced the Government (and/or Louisiana) to certify, accredit, and contract with, or authorize Defendants to participate in Government Healthcare Programs and receive payment.

Fraudulent inducement claims under the False Claims Act require four essential elements in healthcare contexts: (1) falsity—i.e., misrepresentations or omissions during contract formation or program enrollment; (2) knowledge—i.e., actual knowledge, deliberate ignorance, or reckless disregard of the falsity, see 31 U.S.C. § 3729(b)(1); (3) materiality—i.e., misrepresentations must have a natural tendency to influence the government's payment decision under the demanding standard established in *Universal Health Services v. Escobar*, 579 U.S. 176, 194-96 (2016); and (4) causation—i.e., the false statements must have actually induced the government's decision to enter the contract or make payments, not merely had the potential to induce. *United States ex rel. Longhi v. Lithium Power Technologies, Inc.*, 575 F.3d 458, 467 (5th Cir. 2009).

Defendant comment that these claims apply when healthcare providers obtain contracts or program participation through fraud. Under a fraudulent-inducement theory,

plaintiffs must show not only that defendants' misrepresentations had the potential to induce government action, but that they actually did induce (or cause) the government to act. *United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 916 (N.D. Ill. 2015).

Defendants argue that Relator has failed to allege any facts to establish any false or fraudulent statement made to any of the government payors during the provide enrollment or contract formation that induced the government's decision to enter into the contract and make payments. The Court agrees and finds that Count V will be dismissed.

*Count VII – Violations of the False Claims Act: "Conspiracy" 31 U.S.C. § 3729(a)(1)(c)*

Relator alleges that Defendants conspired to defraud the United States by getting false or fraudulent claims allowed or paid, in violation of 31 U.S.C. §3729(a)(3), and conspired to commit violations of 31 U.S.C. §§3729(a)(1)(A) and 3729(a)(1)(B), in violation of 31 U.S.C. §3729(a)(1)(C).

Defendants maintain that Relator does not plead any agreement among identified actors, the time and scope of the agreement, or specific overt acts taken to accomplish the submission of false claims. Instead, she alleges an "atmosphere" where profit outweighed compliance. Defendants argue that Relator's allegations do not amount to an agreement, or satisfy Rule 9(b) or the plausibility standard. The Court finds that Relator has not pled a viable underlying FCA violation with particularity and has not pled the elements of an agreement. The Court finds that Relator has failed to allege sufficient facts to establish a conspiracy and therefore, Count VII will be dismissed.

*Count VIII – Health Care Fraud – 18 U.S.C. § 1347*

Relator alleges that each claim made by Defendants through means of false or fraudulent pretenses in connection with the delivery of or payment for health care benefits, items, or services for behavioral healthcare services represents a false claim for payment because each claim carried with it services that were not rendered.

Defendants note that Section 1347 authorizes federal authorities to bring criminal charges against individuals for health care fraud. However, it does not create any civil right of action under the False Claims Act or any other civil law. See e.g., *Garcia v. Jones*, 2022 WL 2754853, at *7 (D. Or. July 14, 2022) ("To the extent that Plaintiff's allegations of fraud, stalking, money laundering, and tampering with evidence assert violations of federal criminal statutes, such statutes do not generally create a private right of action or provide a basis for civil liability.") (citing *Abcarian v. Levine*, 972 F.3d 1019, 1026 (9th Cir. 2020)). The Court agrees and will dismiss Count VIII.

*Count IX – Violations of Louisiana Medical Assistance Programs Integrity LAW ("LMAPIL") Louisiana Revised Statute § § 46:437.1*

Here, Relator, acting on behalf of herself and the state of Louisiana seeks to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, Louisiana Revised Statute § 46:437.1 *et seq*. Defendant remarks that the Relator relies on generalized descriptions of Medicaid requirements, supervision and staffing allegations, and "upon information and belief" conclusions that Defendants submitted improper claims. Defendants argue that Relator does not plead particular Medicaid claims, dates of service, billing codes, amounts or claim submissions to infer a plausible MAPIL violation with specificity. The Court agrees and will dismiss Count IX.

*Count X – Violations of the Federal Whistleblower Statute 42 U.S.C. § 6971 et seq.*

Relator asserts a claim against Defendants pursuant to 42 U.S.C. § 6971, Employee Protection. Defendants point out that this statute involves Solid Waste Disposal and applies only to matters outlined in Chapter 82 involving same. Thus, it is inapplicable.  Considering that Relator has failed to oppose Defendants' Motin, the Court will dismiss Relator's claim In Count X.

*Count XII – Vicarious Liability Respondeat Superior, Louisiana Civil Article § 2320*

Relator asserts a claim of respondeat superior against her employer under Louisiana Civil Code article 2320, which provides that: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

Defendants argues that Louisiana law regarding vicarious liability for tortious acts and omissions does not apply in a False Claims Act case, which has its own liability and scienter requirements. Furthermore, Defendants also argue that MAPIL sets forth the liability and scienter requirements for claims brought under it. Defendants contend that even assuming that La. C.C. art. 2320 could apply to the case, Relator has failed to name any individual defendant in this case for whom Article 2320 would apply and has failed to cite any authority setting forth "vicarious liability" as a separate cause of action. The Court agrees and will dismiss Relator's claim regarding vicarious liability.

## CONCLUSION

For the reasons explained herein, the Court will grant "Motion to Dismiss Pursuant to Fed.R.Civ P. 12(b)(6) (Doc. 25) in its entirety and dismiss with prejudice, Relator's claims in Count I-X and XII.

**THUS DONE AND SIGNED** in chambers on this 1st day of April, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**